■ In the Matter of LOUIS CIAMPA, Respondent, v PATRICIA CIAMPA, Also Known as MERCEDES MORI, Appellant. (And Another Related Proceeding.) [754 NYS2d 427] —Crew III, J.P. Appeal from an order of the Family Court of Ulster County (Hummel, J.), entered August 30, 2001, which, inter alia, granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, for custody of respondent's children.

Respondent is the biological mother of three children, Adam (born in 1986) and twin boys (born in 1995). The children apparently resided with respondent until some point in 1997 when they were removed by a local social services agency following an incident wherein respondent struck Adam. The record indicates that the children remained in foster care until

November 1997 when petitioner, their maternal grandfather, obtained temporary custody of them. The twins and Adam resided with petitioner until April 1998 and June 1998, respectively, and thereafter returned to live with respondent. In January 1999, petitioner purchased a home for respondent and the children, upon which he paid all utilities and taxes, and provided respondent, who was only sporadically employed, with transportation, food and financial support.

In June 2000, while visiting the children's maternal grandmother in Connecticut, respondent struck Adam and subsequently was arrested by local law enforcement officials. As a result, petitioner filed a family offense petition against respondent and, shortly thereafter, sought custody of Adam and the twins. Family Court granted petitioner temporary physical custody of the children pending a hearing. Following respondent's release from jail in Connecticut and after petitioner had obtained an order of protection, respondent arrived at petitioner's residence, again attacked Adam and, when petitioner attempted to intervene, bit petitioner on the arm. Respondent again was arrested.

A fact-finding hearing on the underlying petitions ensued, during the course of which testimony was received from, among others, petitioner, the children's maternal grandmother and the psychologist who performed the court-ordered evaluation of the parties. At the conclusion of the fact-finding and *Lincoln* hearings, Family Court, inter alia, awarded petitioner sole legal and physical custody of the children and granted respondent weekly supervised visitations with the twins. Visitation with Adam was permitted only to the extent that Adam so desired. This appeal by respondent ensued.

Respondent's sole contention on appeal is that petitioner failed to demonstrate the existence of "extraordinary circumstances" sufficient to warrant depriving her of custody of the children. As the case law makes abundantly clear, a biological parent has a right to custody of his or her children, superior to that of all others, absent surrender, abandonment, persistent neglect, unfitness or other like extraordinary circumstances (*see Matter of Diane FF. v Faith GG.*, 291 AD2d 671, 672), and the burden of proving such extraordinary circumstances lies with the party attempting to divest the biological parent of custody (*see Matter of McDevitt v Stimpson*, 281 AD2d 860, 861). As applied to the matter before us, petitioner bore the burden of demonstrating that respondent engaged in "gross misconduct or other behavior evincing utter indifference and irresponsibility" (*Matter of Male Infant L.*, 61 NY2d 420, 427

[citations omitted]). In our view, petitioner met that burden here and, accordingly, Family Court's order is affirmed.

As a starting point, the record amply supports Family Court's finding that respondent completely abdicated all of her rights and responsibilities as a parent and that she treated Adam as a "virtual servant." According to the testimony adduced at the hearing, Adam, who has attended 14 schools during his academic career, has been responsible for housekeeping chores since he was seven years old and has been cooking meals for the family since he was 12 or 13 years old. Even after petitioner, in an apparent effort to provide some stability for his grandchildren, purchased a home for respondent in January 1999 and provided the family with food and financial support, respondent and the children continued to live in squalor—a situation exacerbated by the acquisition of a puppy which was permitted to defecate throughout the house. The record further reflects that despite the financial and emotional support received during this period, respondent continued to depend upon Adam to cook, clean and parent his twin brothers. Indeed, during the 1999-2000 school year, Adam missed approximately 50 days of school due in large measure to the responsibilities that he was forced to assume at home. The record also reveals that respondent frequently would leave the children alone overnight and, on one occasion, left then-14-year-old Adam to care for his twin brothers for four days while she was socializing with a paramour. In short, we agree with Family Court that respondent's utter and complete failure to provide any parental guidance, support or stability for her children plainly evidences an abdication of her parental rights and duties and rises to the level of extraordinary circumstances (*see Matter of Elinor D. v Mary Ann A.*, 199 AD2d 1080; *see also Matter of Banks v Banks*, 285 AD2d 686).

In addition to the foregoing, the record makes clear that respondent physically attacked Adam on at least three occasions—once in 1997, which lead to the children's removal from respondent's home, once in June 2000 in Connecticut, which resulted in petitioner obtaining temporary custody of the children, and once in July 2000 in New York, after petitioner had obtained an order of protection against respondent. Coupled with these physical assaults was evidence that respondent routinely would verbally berate Adam for even the smallest offenses. Indeed, the physical assault in Connecticut was preceded by an expletive-laden tirade that began when Adam informed respondent that he had failed to launder a uniform that respondent needed for work. Simply stated, the record

makes plain that Adam suffered both physical and emotional abuse at the hands of respondent.

In our view, the uncontroverted proof* of respondent's complete abdication of parental rights and responsibilities and violent physical and verbal attacks upon Adam qualifies as "gross misconduct or other behavior evincing utter indifference and irresponsibility" (*Matter of Male Infant L.*, 61 NY2d 420, 427, *supra* [citations omitted]) and, coupled with the disruption of custody following the 1997 and 2000 incidents, constitutes extraordinary circumstances. As to the ensuing best interest analysis, we agree with Family Court that the children's best interests are served by awarding custody to petitioner. Petitioner plainly is capable of providing the children with the stability, structure and financial and emotional support that they need, and the children are, by all accounts, thriving in his care. Accordingly, we are unable to discern any basis upon which to disturb Family Court's order.

Peters, Rose, Lahtinen and Kane, JJ., concur. Ordered that the order is affirmed, without costs.

---

* Respondent did not testify, thereby permitting us to draw the strongest possible inference against her (*see Matter of Jared XX.*, 276 AD2d 980, 983).